IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | CASE NO. 5:13-bk-04165-RNO |
| CRAIG LEHMANN | : | |
| | : | CHAPTER 7 |
| Debtor | : | |
| ****************************** | : | ****************************** |
| | : | |
| BANKUNITED, N.A. | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| CRAIG LEHMANN, and | : | |
| BUSINESS EVENT SOLUTIONS, INC. | : | |
| | : | |
| Defendants | : | ADVERSARY NO. 5:13-ap-00282-RNO |

**OPINION**[1]

Before the Court is Craig Lehmann's ("Debtor" or "Defendant") Motion to Dismiss Adversary Proceeding ("Motion to Dismiss"). It prays for the dismissal of the Complaint Objecting to Discharge under Section 727(a)(2)[2] of the Bankruptcy Code and Objecting to Discharge of Debt under Section 523(a)(6) of the Code filed by BankUnited, N.A. ("BankUnited" or "Plaintiff"). For the foregoing reasons, the motion is granted in part and denied in part.

**I.     Jurisdiction**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J).

---

[1]     Drafted with the assistance of Joseph C. Barsalona II, Esq., Law Clerk.

[2]     Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("BAPCPA").

## II. Facts and Procedural History

This matter revolves around the Debtor's alleged activities and actions as an officer of two different corporations: Craig Michaels, Inc. ("CMI") and Business Event Solutions Inc. ("BES"). CMI is a New York corporation in the business of organizing and operating conference events for other corporations. Compl. ¶ 3; Mot. to Dismiss ¶ 5. The Debtor was an officer of CMI as well as its majority shareholder. Mot. to Dismiss ¶ 5. Towards the end of CMI's existence, he allegedly owned 96% of all outstanding shares of the company and was the only individual signing contracts and making loans in the company's name. Compl. ¶ 18. On June 13, 2013, the Debtor formed BES, another event-planning business. Compl. ¶ 19. BES is also a New York corporation with its primary place of business in New York City. Compl. ¶ 5; Mot. to Dismiss ¶ 3. The Debtor is an officer and majority shareholder of BES. Mot. to Dismiss ¶ 3.

CMI began experiencing financial problems at some point in 2013, leading it to default on certain loans. As a result, BankUnited initiated an action against CMI on July 3, 2013, in New York state court seeking recovery of damages based upon three loans made to CMI and guaranteed by the Debtor ("New York Action"). Compl. ¶ 11. BankUnited commenced a parallel action for a preliminary injunction against CMI and Debtor seeking to prohibit both parties from "misusing or attempting to profit from or cause damage to the Plaintiff's collateral, including accounts receivable, general intangibles, goodwill, and customer list of CMI" ("Preliminary Injunction Action"). Compl. ¶ 12. On July 9, 2013, The New York Court issued a temporary restraining order against CMI and the Debtor "prohibiting [them] from interfering with BankUnited's efforts to collect outstanding accounts receivable from the customers and any

2

Case 5:13-ap-00282-RNO    Doc 13    Filed 06/06/14    Entered 06/06/14 14:19:19    Desc
Main Document    Page 2 of 12

other corporate account debtors or using or profiting from the Collateral, including the customer list or other records or good will . . . ." Compl. Ex. E ¶ 1.

Before a final hearing could take place in the Preliminary Injunction Action, both CMI and the Debtor filed separate bankruptcy cases in separate forums. Compl. ¶ 13. CMI filed a voluntary petition under Chapter 7 on August 5, 2013, in the United States Bankruptcy Court for the Southern District of New York (Case number: 13-12576-cgm), which is assigned to the Honorable Cecelia G. Morris ("CMI Bankruptcy Case"). Craig Lehmann filed his voluntary Chapter 7 petition in this Court on August 12, 2013.

Prior to either debtor filing bankruptcy, the Plaintiff alleges the Debtor used his controlling position within CMI as a way to access and transfer that company's assets to BES. Compl. ¶¶ 19-35. Specifically, the Debtor's alleged actions include:

- Employing the former employees of CMI on commission of BES (Compl. ¶ 22)
- Setting up CMI computer hardware and software to run BES (Compl. ¶ 23)
- Creating a website for BES which "had visitors to CMI's website automatically redirected to the new BES website" (Compl. ¶ 25)
- Ordering BES employees to contact CMI customers to continue business relationships (Compl. ¶ 26)
- Entering into new contracts with former CMI customers and "crediting them any payments they had previously made to CMI for scheduled events" (Compl. ¶¶ 27, 30)
- Producing some events with BES that CMI had originated (Compl. ¶ 31)
- Transferring or converting payments made by CMI customers to BES (Compl. ¶ 34)
- Directing refunds of money by CMI clients to the Debtor and his family members (Compl. ¶ 35)

3

Despite these purported attempts to make BES a separate, successful going concern, BES ceased doing business as of October 22, 2013. Compl. ¶ 36. The Plaintiff claims that Lehmann revealed this information during a Rule 2004 Examination in the CMI Bankruptcy Case. Compl. ¶ 21. However, no transcript was provided to support those assertions in the Complaint.

The present adversary proceeding was filed on November 26, 2013. The Debtor filed a Motion to Dismiss in lieu of an answer on December 27, 2013. On March 13, 2014, a hearing was held and oral argument was made. After the hearing the parties were given the option to brief the affect the CMI Bankruptcy Case on the present adversary proceeding. Both letter briefs have now been submitted. This matter is ripe for opinion.

### III. Discussion

#### A. Standard to Decide a Motion to Dismiss Under F.R.B.P. 7012(b)

Federal Rule of Bankruptcy Procedure 7012(b) incorporates, and makes applicable to bankruptcy adversary proceedings, Rules 12(b)-(i) of the Federal Rules of Civil Procedure. Rule 12(b)(6) requires dismissal of a complaint which fails to state a claim upon which relief can be granted. The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Factual allegations in the complaint should be treated as true and construed in the light most favorable to the non-moving party. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1410 (3d Cir. 1991).

The Supreme Court's language in both *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), inform our analysis at the motion-to-dismiss stage. The Court stated in *Twombly* that while detailed factual allegations are not needed in a complaint, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires

4

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Two years later, the *Iqbal* Court described "facial plausibility" in this way:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 556 U.S. at 678 (internal citations and quotations omitted).

### B. BES is Dismissed as Co-Defendant

As a preliminary matter, BES cannot be a defendant in this adversary proceeding and any charges against it are dismissed. The Plaintiff's charges against the Debtor and BES are based solely on §§ 523(a)(6) and 727(a)(2) grounds. Section 523(a) reads in pertinent part: "A discharge under section 727, . . . of this title does not discharge **an individual debtor** from any debt" that falls under any of the enumerated categories. 11 U.S.C. § 523(a). Similarly, section 727(a) states "[t]he court shall grant **the debtor** a discharge, unless" the debtor meets one of the specific grounds for denial of discharge. Furthermore, the term "debtor" is defined in the Code as a "person or municipality concerning which a case under this title has been commenced." 11 U.S.C. § 101(13). Because the term "debtor" is conspicuously placed in sections 523(a) and 727(a) of the Code, it would be improper to add non-debtors to any cause of action relating to a debtor's personal discharge. Thus, Craig Lehmann, the Debtor, can be the only proper defendant in this action.

### C. The Section 727(a)(2) Allegation Fails to State a Claim and Is Dismissed

BankUnited alleges the Debtor should not be granted a discharge under § 727 because Craig Lehmann "transferred, removed, destroyed, mutilated, or concealed . . . property of the debtor" with the intent to "hinder, delay, or defraud" his creditors. 11 U.S.C. § 727(a)(2)(A). Because the property supposedly transferred, removed, destroyed, mutilated, or concealed, belonged solely to CMI, and is not the "property of the debtor," this allegation fails to state a claim upon which relief may be granted and shall be dismissed.

A discharge in a Chapter 7 case is "the heart of the fresh start provisions of the bankruptcy law." *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 384 (1977)); *DeAngelis v. Forbes (In re Forbes)*, Adversary No. 12-1032, 2013 WL 6230369, at *4 (Bankr. D.N.J. Dec. 2, 2013). Therefore, bankruptcy courts must construe the provision in favor of the debtor. *Rosen*, 996 F.2d at 1531. Plaintiffs in an objection-to-discharge action must prove the elements of the grounds for objection by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 298, 111 S. Ct. 654, 112 L. Ed.2d 755 (1991).

The relevant portion of § 727(a) reads:

> (a) The court shall grant the debtor a discharge, unless—
>
>> (2) the debtor, with intent to hinder, delay, or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>>
>>> (A) **property of the debtor**, within one year before the date of the filing of the petition;

11 U.S.C. § 727(a)(2)(A) (emphasis added).  In essence, a plaintiff must establish three elements to satisfy its burden of proof: "(1) disposition of property, such as a transfer or concealment; (2) subjective intent on the debtor's part to hinder, delay, or defraud one or more creditors . . .; and (3) that both the disposition and subjective intent occurred within the one-year period before the petition was filed."  *Wachovia Bank, N.A. v. Spitko (In re Spitko)*, 357 B.R. 272, 299 (Bankr. E.D. Pa. 2006) (citing *Rosen*, 996 F.2d at 1531); *see also In re Lawson*, 122 F.3d 1237, 1240 (9th Cir. 1997).

The dispositive issue here is whether the assets of CMI could plausibly be found to be "property of the debtor" and not that of a separate legal entity, i.e. CMI.  Courts that have focused on the "property of the debtor" issue "have recognized that [§] 727(a)(2)(A) is concerned with the disposition of property in which the debtor has a 'direct property interest.'" *Spitko*, 357 B.R. at 299 (citing *In re Thurman*, 901 F.2d 839, 841 (10th Cir. 1990); *In re Cassis*, 220 B.R. 979, 983 (Bankr. N.D. Iowa 1998); *Matter of Woodhead*, 172 B.R. 628, 632 (Bankr. D. Neb. 1994).  Although these opinions do not define or explain the term 'direct proprietary interest,' the following example was provided in *In re Cassis*, 220 B.R. 983, and adopted in this circuit by *In re Spitko*, 357 B.R. at 299:

> A debtor who is a shareholder in a corporation will not be denied a discharge based on transfer of or injury to corporate property.  The plaintiff has the burden to establish that the property is property of the estate.  It is not because the debtor/shareholder is not the owner of property of the corporation.  **The property interest of the debtor and the debtor's estate is limited to the stock certificates**.

*Spitko*, 357 B.R. at 299 (emphasis added).  Furthermore, *Black's Law Dictionary* defines the term "proprietary interest" as "[t]he interest held by a property owner together with all

7

appurtenant rights, **such as a stockholder's right to vote the shares**." *Black's Law Dictionary* 371 (3rd pocket ed. 2006) (emphasis added). By its plain meaning, then, a debtor/shareholder's only direct proprietary interest in a corporation are the stock certificates he holds evidencing his ownership interest in that corporation. Conversely, a debtor/shareholder does *not* have a direct proprietary interest in the realty or personalty held by the corporation. As a result, "section 727(a)(2)(A) does not apply when the disposition involves property belonging to someone, or some other entity, other than the debtor, even if the transfer may cause an incidental effect upon the debtor's assets." *Spitko*, 357 B.R. at 299 (citing *Thurman*, 901 F.2d at 841).

In order for the property of an independent entity to be deemed "property of the debtor," a plaintiff must prove that the corporation's property *is* the debtor's property. To do this, a plaintiff must reverse pierce the corporate veil under Pennsylvania law. *In re Blatstein*, 192 F.3d 88, 100 (3d Cir. 1999). "While a classical piercing renders a shareholder responsible for the actions of the corporation, in a reverse piercing, assets of the corporate entity are used to satisfy the debts of a corporate insider so that the corporate entity and the individual will be considered one in the same." *Id.* at 100 (quoting *In re Mass*, 178 B.R. 626, 627 (M.D. Pa. 1995)) (internal quotation marks omitted). In this Circuit, "only exceptional circumstances warrant granting [the] unusual remedy" of reverse veil piercing. *Id.* Thus, the equitable remedy will only be granted to "prevent fraud, illegality, injustice, or a contravention of public policy." *Id.*

Here, I find that it is not plausible for the Plaintiff to reverse pierce the corporate veil of CMI because that company is absolutely a detached corporate entity from Craig Lehmann the individual. Specifically, the independent bankruptcy filing of CMI is definitive proof that the company is distinct from the Debtor, and not an alter ego. First, the CMI Bankruptcy Case has

8

been pending in front of the Hon. Cecelia G. Morris since August 5, 2013, and not one motion to dismiss relating to the validity of the corporate form has been filed. If such a motion is necessary, the proper forum in which to prosecute it is the Southern District of New York, not this Court.

Secondly, numerous attorneys are involved in the CMI Bankruptcy case, all assumedly acting under the belief that the company has independent assets that can be liquidated. Craig Lehmann was subject to a Rule 2004 examination under that Court's jurisdiction, yet the fruits of the exam did not lead any party to question the validity of CMI's corporate identity. Finally, a fully independent chapter 7 trustee, Mr. Roy Babitt, has been assigned to the CMI case, and he too has not raised the possibility that CMI existed solely for the purpose of committing fraud. Instead, Mr. Babitt has already commenced an adversary proceeding for the *benefit* of CMI's creditors. Mr. Babitt proceeds as the trustee because a separate CMI creditor body exists. Out of respect for the separate creditor body of CMI, who might seek to prosecute Mr. Lehmann in the Southern District of New York, it would be inappropriate for this Court to allow one of its creditors to win the race to courthouse by reverse piercing CMI. This Court does not see the grounds, nor has the jurisdiction, to apply such an "exceptional" equitable remedy. *Blatstein*, 192 F.3d at 100. The CMI Bankruptcy case continues along independently from that of Mr. Lehmann's, and I will not disturb its progression. Thus, the section 727(a)(2)(A) claim will be dismissed.

        **D.**      **The Section 523(a)(2) Claim Survives**

BankUnited's second claim against the Debtor alleges that he perpetuated a "willful and malicious injury . . . to another entity or to the property of another entity." 11 U.S.C. §

9

Case 5:13-ap-00282-RNO    Doc 13    Filed 06/06/14    Entered 06/06/14 14:19:19    Desc
Main Document    Page 9 of 12

523(a)(6). Because the claim is plausible on its face, it survives the Motion to Dismiss.

In examining a discharge-exception claim under § 523, such exceptions are construed strictly against creditors and liberally in favor of debtors. *In re Cohn*, 54 F.3d 1108, 1113 (3d Cir. 1995); *In re Gotwald*, 488 B.R. 854, 865 (Bankr. E.D. Pa. 2013); *Jou v. Adalian (In re Adalian)*, 481 B.R. 290, 297 (Bankr. M.D. Pa. 2012) [hereinafter *Adalian II*]. For that reason, the burden of proof lies squarely on the creditor. *Cohn*, 54 F.3d at 1113; *Gotwald*, 488 B.R. at 865. The creditor must prove the elements under § 523 by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991); *Adalian II*, 481 B.R. at 297.

Section 523(a)(6) provides that a "discharge under section 727 . . . does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or the property of another entity." 11 U.S.C. § 523(a)(6). "Willful" and "malicious" are terms of art in the bankruptcy context. "Willful" refers to a deliberate or intentional injury, not just a deliberate or intentional act that may lead to injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998); *In re Kates*, 485 B.R. 86, 100 (Bankr. E.D. Pa. 2012); *Adalian II*, 481 B.R. at 297. Thus, actions taken either for the purpose of causing injury or that have a substantial certainty of producing injury are deemed "willful" under § 523(a)(6). *In re Conte*, 33 F.3d 303, 307-09 (3d Cir. 1994).

Similarly, "malice" has a unique meaning under § 523(a)(6): "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *Jou v. Adalian (In re Adalian)*, 474 B.R. 150, 163 (Bankr. M.D. Pa. 2012); *In re Vidal*, No. 10-14071, 2012 WL 3907847, at *28 (Bankr. E.D. Pa. Sept. 7, 2012); *In re Coley*, 433 B.R. 476, 498 (Bankr. E.D. Pa. 2010). In this Circuit, a subjective standard is used to determine the intent of the Debtor, in that

the debtor must have "actual knowledge" that harm to the creditor was substantially certain to occur. *See, e.g.*, *In re Conte*, 33 F.3d at 307-09; *Adalian II*, 481 B.R. at 297; *In re Glenn*, 470 B.R. 731, 736 (Bankr. M.D. Pa. 2012). One can prove "malicious" intent through evidence of the "debtor's knowledge of the creditor's right and the debtor's knowledge that the conduct will cause particularized harm." *In re Glenn*, 470 B.R. at 736 (citing *In re Paul*, 266 B.R. 686, 696 (Bankr. N.D. Ill. 2001)).

Here, the factual allegations are sufficient to prove "willful" and "malicious" actions on the part of the Debtor. Craig Lehmann was the owner and president of CMI. Compl. ¶ 17. As owner and president, it is plausible that he had access to, and frequently used, CMI's assets in his professional capacity. Indeed, the Debtor admitted in a Rule 2004 examination in the CMI Bankruptcy Case to forming BES by using the assets of CMI. Compl. ¶ 21. By transferring these assets to an entity (BES) separate from CMI, the Debtor may have put the assets out of the reach of the CMI creditors, by conveying possession, title, or otherwise. Thus, it is plausible that the Debtor committed a willful act substantially certain to injure BankUnited.
Furthermore, because the Debtor signed a personal guaranty as to CMI's debt owed to BankUnited, the Debtor had direct knowledge that BankUnited held a security interest in a portion of CMI's property. I find that the signature on the personal guaranty may indeed prove "debtor's knowledge of [BankUnited]'s right[s] and the debtor's knowledge that the conduct will cause particularized harm" at a later trial. *In re Glenn*, 470 B.R. at 736. Thus, it is plausible that BankUnited can prove that Craig Lehmann acted with malicious intent when transferring the assets because he may have had "actual knowledge" that harm to the BankUnited was substantially certain to occur. *In re Conte*, 33 F.3d at 307-09.

11

Finally, the potentially willful and malicious acts at issue here were perpetrated against "property of another entity." The business assets were the property of CMI, and BankUnited held a secured interest in them originating from the loans from the bank to CMI. Hence, this element of the claim is satisfied as well.

For these reasons, BankUnited's § 523(a)(6) claim shall proceed to discovery.

## IV. Conclusion

Consistent with the reasoning given above, Defendant Craig Lehmann's Motion to Dismiss Adversary Proceeding is granted in part and denied in part. It is granted in that the Plaintiff's § 727(a)(2) claim is dismissed with prejudice. It is denied to the extent that the § 523(a)(6) claim survives. An order will be entered consistent with the foregoing opinion.

By the Court,

Date: June 6, 2014

Robert N. Opel, II, Bankruptcy Judge

(BI)